**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**HELEN J. PROCTOR, on behalf of**
**herself and others similarly situated**

                                                                                      **PLAINTIFF**

**v.**                                         **No. 2:22CV157-BSM**

**Thomas J. Vilsack, In his official capacity**
**as Secretary of Agriculture; USDA RURAL**
**DEVELOPMENT; USDA HOUSING SERVICE**
**MICHAEL SCOTT; and SCOTT & SON CONSTRUCTION**

                                                                                      **DEFENDANTS**


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FEDERAL DEFENDANTS**
**TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**


**I. OVERVIEW**

In January 2008, plaintiff, Helen J. Proctor, then age 71, applied to the United States

Department of Agriculture (USDA), Rural Development, (RD), for a Section 502 Direct Loan

Program loan (Section 502 loan) to build a house on three acres she owns in Lake Village,

Arkansas. She was living in a mobile home on her property. RD approved a loan in the amount of

$99,500 to build the house and $2,000 for closing costs. The loan was closed in December of 2008,

and plaintiff signed a promissory note for payment of the loan in installments and a mortgage on

plaintiff's property to secure the loan. At the December 9, 2008 pre-construction conference, Mrs.

Proctor was reminded that "There Is No More Money !!!". Complaint, doc. #1, p. 58.

Plaintiff hired a contractor to build a house for $99,500, Scott and Son, Monticello,

Arkansas. RD did not select the contractor and was not a party to the construction contract. At the

loan closing, plaintiff paid the contractor $1800 for a septic system, which was not included in the

contactor's bid. Construction began in March 2009. From April 22 to August 25, 2009, RD

employees made three inspections of the house. After each inspection, a government check payable to plaintiff, or jointly to plaintiff and the builder, was issued for the work that had been completed.  The total amount paid to the contractor was $45,969. Plaintiff endorsed the first and second checks. The third check was payable to plaintiff and the contractor in the amount of $11,343. Unknown to RD, a local bank allowed the contractor to deposit the check without plaintiff's endorsement.

After the first RD inspection, plaintiff's son, Hal Palmer, who resides in North Carolina and has power of attorney from his mother, began to complain that the contractor was not building the house according to the house design plans. He was reminded that RD is not a party to the construction contract, and any dispute with the contractor should be resolved between the property owner and the contractor. Cheryl E. Ivy Declaration, Att. 23, 24. RD inspections are conducted to determine whether the house is adequate security for the loan and meets agency site and dwelling requirements. See, 7 C.F.R. § 1924.9(a) (formerly codified at 7 C.F.R. § 1924.5(f)). The RD Architect Michael VanLandingham and other RD officials, plaintiff's daughter and the contractor made a site visit on September 24, 2009. RD concluded that the house was approximately 75% complete, satisfied the agency's criteria of decent, safe and sanitary housing, and that the problems observed could be readily repaired so long as plaintiff and the contractor agree to continue with construction. Cheryl E. Ivy Declaration, Att. 29.

In January 2010, plaintiff notified RD that she wanted to terminate the contractor, Scott and Son, and alleged that the contractor had not returned to the work site since August 23, 2009. Her request to terminate the contractor was approved, and she was reminded that $53,531.00 remained in her loan account to complete construction of the house. Later, RD received from its National Office $1800 for a septic system, which plaintiff did not have to repay.

In April 2011, plaintiff notified RD that she had selected another contractor. RD replied that a surety bond would be required because the selected contractor had recently filed a bankruptcy petition in the U.S. Bankruptcy Court, and according to court records, was no longer in the construction business. RD also noted that the submitted bid substantially exceeded the funds remaining in plaintiff's loan account. In October 2011, plaintiff submitted bids to complete construction of the house from three contractors. RD informed plaintiff that the bids substantially exceed the remaining funds in her loan account, that the scope of the proposed work was not in accordance with the original construction plans, and that the bids did not include an itemized description of the proposed work and related costs. Plaintiff was requested to identify the source of money to pay for costs that exceed the remaining loan funds, select a contractor and provide a certified financial statement from the contractor. Plaintiff did not comply with RD's request.

By the close of 2014, construction of the house had not been completed, and plaintiff had informed RD that she would not make payments on the loan. In January 2015, RD notified plaintiff that she should select a licensed contractor and submit a detailed construction plan by February 23, 2015, or the remaining loan funds would be de-obligated. Plaintiff was informed that if her loan funds were de-obligated, or construction was not completed within 90 days of plan acceptance, RD would begin the foreclosure process by accelerating her loan account. Plaintiff did not respond, and on February 26, 2015, RD began the process of de-obligating the unused construction funds and accelerating her account. Effective April 2, 2015, plaintiff's loan was converted from a construction loan to a permanent loan. This action generated an automated letter to plaintiff from the RD Central Service Center informing her of loan servicing procedures and how to make payments.

In May 2015, plaintiff's son filed on behalf of plaintiff a complaint of age and disability (unspecified) discrimination with the USDA Office of the Secretary for Civil Rights (OASCR). USDA OASCR investigated the complaint and found no evidence of discrimination.

Plaintiff was notified in writing that if she did not pay the past due amount of her loan debt, RD would submit the past due debt to the Treasury Offset Program for administrative offset against any federal payments.  Plaintiff never made a payment on her RD loan. Pursuant to the Federal Debt Collection Improvement Act, 31 U.S.C. § 3701, et seq., in March 2019, the U.S. Treasury began administrative offset against plaintiff's monthly Social Security benefits to collect the delinquent RD loan. The Treasury offset ended on July 1, 2022. Between March 1, 2019 and July 1, 2022, the U.S. Treasury collected $838.73, plus $478.27 in fees, for a total Treasury offset amount of $1,317.00. RD has not taken legal action to foreclose the mortgage that secures payment of plaintiff's loan. For a detailed chronology of relevant events, see defendants' statement of facts and supporting exhibits, filed contemporaneously herewith.

Plaintiff filed a *pro se* complaint against USDA in this court on July 21, 2020, case number 2:20cv154.  USDA filed a motion for summary judgment. Plaintiff obtained counsel, who moved for voluntary dismissal.  This court granted plaintiff's motion, and on December 10, 2021, dismissed the case without prejudice. Case No. 2:20cv154, doc. #33, 34.

On September 9, 2022, plaintiff filed her present complaint. Her complaint alleges that RD's approval of the contractor, Scott and Son Construction, and oversight of the construction progress did not comply with the agency's Section 502 loan responsibilities under RD guidelines and regulations. Doc. #1 at p. 2-7. Plaintiff alleges that in 2008-2009, RD approved an unqualified contractor, failed to properly inspect the contractor's work and made payments to the contractor, even though the work was shoddy and not in accordance with the house design plans. She further

alleges that RD [in 2010-2011] cancelled the construction contract but did not require the contractor to reimburse for overpayments, refused to add construction funds and refused to approve proposals from other contractors, "without good cause". See the complaint's "Timeline", doc. #1 at p.14-18.

The complaint asserts two claims against the federal defendants: breach of contract by RD (Count I) and RD's arbitrary and capricious administration of plaintiff's Section 502 loan (Count III). Doc. #1 at p. 18-19, 20-23. Plaintiff seeks from the federal defendants: declaratory judgment that RD's acts and omissions violate the Fifth Amendment and USDA statutes, regulations and handbooks; declaratory judgment that RD acted without authority in foreclosing plaintiff's mortgage and diverting her social security payments, and that RD must make plaintiff whole; an injunction that enforces the declaratory judgments and requires RD to restructure plaintiff's mortgage so as to make plaintiff whole, add funds to correct the construction errors and overruns and reimburse plaintiff for the money offset from her social security benefits, with interest, and an award of unspecified compensatory damages "as determined by this court". Doc. #1 at p. 23-24.

## II.  STANDARDS OF REVIEW

A challenge to the court's subject matter jurisdiction may be brought under Rule 12(b)(1), Federal Rules of Civil Procedure. Rule 12(b)(1) allows a defendant to challenge the sufficiency of the complaint on its face (facial attack), or to challenge its factual allegations (factual attack). *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 728, 729 n. 6 (8th Cir. 1990). A Rule 12(b)(1) motion that relies on matters outside the pleadings is considered a factual attack. Here, the complaint and its exhibits show that court does not have jurisdiction to consider plaintiff's breach of contract claim. See, part III B, below.

In resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which the court can grant relief, the allegations of fact are accepted as true, and all reasonable inferences arising from the factual allegations are construed in the plaintiff's favor. The court is not required to accept legal conclusions.  To overcome a Rule 12(b)(6) motion, a complaint must include factual allegations sufficient to state a claim for relief that is plausible on its face, and raise a right to relief above a speculative level. A complaint must furnish more than labels and conclusions, or a recitation of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009); (*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007); *Gregory v. Dillard's Inc*., 565 F.3d 464, 473 (8th Cir. 2009).

Summary Judgment may be granted under Rule 56, Fed. R. Civ. Proc., if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Rule 56(a). The moving party has the burden of informing the court of the basis for its motion and the evidence of record that demonstrates the absence of a genuine issue of material fact. If the movant does so, the nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The court must view facts in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. If the record taken as a whole could not cause a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*). A fact is material if its resolution affects the outcome of the case. *Othman*, 671 F.3d 675. Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis*, 606 F.3d 461, 465 (8th Cir. 2010).

III.    BREACH OF CONTRACT (Count I)

A.  PLAINTIFF'S COMPLAINT DOES NOT STATE A COGNIZABLE BREACH OF CONTRACT CLAIM

The only documents described in the breach of contract allegations are the October 21, 2008 $101,500 loan commitment and plaintiff's mortgage. Doc. #1 at p.18-19.  The loan commitment is Exhibit K to the complaint. Doc. #1 at p. 5, 59. These documents obligate RD to loan plaintiff $101,5000, which it did. The complaint does not identify any contract between RD and plaintiff that RD breached.

B.  THE COURT LACKS JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIM

Even if the complaint did state a breach of contract claim, nevertheless, the court does not have subject matter jurisdiction. Although not mentioned in the complaint, 28 U.S.C. § 1346(a)(2) gives district courts limited jurisdiction over contract claims against the federal government. Section 1346(a)(2) (part of the Tucker Act) is a limited waiver of sovereign immunity and grants jurisdiction to the district courts, concurrent with the Court of Claims, over civil actions against the United States, for money damages not exceeding $10,000, founded upon a contract with the United States. The Court of Claims has jurisdiction of contract claims in excess of $10,000. 28 U.S.C. § 1491. *Mullay v. United States*, 95 F.3d 12, 14 (8th Cir. 1996);  *C.H. v. Sullivan*, 920 F.2d 483 (8th Cir. 1990). The Tucker Act authorizes civil actions for money damages only. It does not empower the district courts to grant declaratory or injunctive relief.  *Richardson v. Morris*, 409 U.S. 464, 465 (1973); *Lee v. Thornton*, 420 U.S. 139, 140 (1975); *C.H. v. Sullivan*, 920 F.2d 485.

Although the complaint does not designate the amount sought for compensatory damages, it is clear from the complaint's allegations and exhibits that plaintiff seeks to recover damages in excess of $10,000. RD's loan commitment was for $101,500. The disputed partial payments to the

contractor were $45,969. Doc. #1 at 17-18, 22. Because construction of the house was not completed, plaintiff has suffered "great stress" and had "to reside in unhealthy and unsafe conditions". Doc. #1 at 22. Plaintiff requests that USDA be ordered to add funds to correct the construction errors and overruns. Doc. #1 at p. 23, 24. Plaintiff claims she is entitled to $30.00 per day from the original completion date of June 15, 2009 until the house is completed. She also seeks reimbursement for expenses incurred in the amount of $19,077.00. Doc. #1 at p. 38-39. Assuming *arguendo* that the complaint states a breach of contract claim, the court lacks jurisdiction over the claim because plaintiff seeks monetary damages in excess of $10,000.

## C.  PLAINTIFF'S BREACH OF CONTRACT CLAIM IS TIME-BARRED

In addition, plaintiff's breach of contract claim is barred because the complaint filed herein on September 9, 2022 was not filed within the general six-year period of limitation for civil actions against the United States, 28 U.S.C.§ 2401(a).  There is no statute of limitation specific to civil actions in the district courts under the Tucker Act, 28 U.S.C § 1346(a)(2). Accordingly, section 2401(a) is applicable to Tucker Act claims brought in the district courts. *Loudner v. United States*, 108 F.3d 896, 900 (8th Cir. 1997); *Konecny v. United States*, 388 F.2d 59, 61, 63 (8th Cir. 1967); *Canadian St. Regis Band of Mohawk Indians v. State of New York*, 640 F. Supp. 203, 208 (ND NY 1986). Section 2401(a) applies to both monetary damages claims and equitable claims. *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990), cert. denied 498 U.S. 824. Except for certain claims not applicable here, such as tort claims, section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

For purposes of section 2401(a), a plaintiff's claim first accrues when the plaintiff knew, or in the exercise of reasonable diligence should have known, that she had a claim. *Sisseton-*

8

*Wahpeton Oyate v. U.S. Army Corps of Engineers*, 888 F.3d 906, 917 (8th Cir. 2018), citing *Izaak Walton League of America, Inc. v. Kimbell*, 558 F.3d 751, 59 (8th Cir. 2009). The six-year period of limitation was not tolled while plaintiff's previous lawsuit was pending (July 21, 2020-December 10, 2021). "A dismissal without prejudice does not toll a statute of limitation. [internal citation omitted]. Indeed, its effect is just the opposite. Once a dismissal without prejudice is entered and the pending suit is dismissed, it is as if no suit had ever been filed." *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995).

RD's acts and omissions that are the basis of plaintiff's claims occurred long before plaintiff filed the instant lawsuit. Plaintiff's loan was closed on December 9, 2008. RD's inspections of the construction of the house and partial payments to the contractor for the work performed occurred in 2009. In June 2009, plaintiff and her representative began to complain to RD that the contractor's work did not comply with the house plans, and that the contractor was overpaid. RD sent her a letter dated January 8, 2010, advising that disputes with the contractor should be resolved between plaintiff and the contractor and that disputes with the contractor did not nullify plaintiff's obligations under her promissory note and mortgage. Cheryl E. Ivy Declaration, At. 33. Thus, plaintiff's breach of contract claim against the federal defendants accrued by the end of January, 2010.

Plaintiff terminated the construction contract with Scott & Son Construction, and submitted bids from other contractors. RD rejected those bids, which far exceeded the remaining loan funds. These events occurred in 2010-2011. If plaintiff's breach of contract claim had not already accrued, it accrued by January 2012. By that time, plaintiff had been informed that RD would not resolve her disputes with Scott and Son Construction, that completing construction of the house was

9

plaintiff's responsibility and that only the funds remaining in her loan account would be available to complete the house.

In September 2014, plaintiff requested RD to release the mortgage, remove the structure (unfinished house) on her property and refund the money she had spent to build the house. RD declined her request by letter dated October 23, 2014. Cheryl E. Ivy Declaration, Att. 59. If plaintiff's breach of contract claim had not already accrued, certainly her claim accrued by the end of October, 2014. Plaintiff in November 2014 informed RD she would not make mortgage payments, and that she wanted the structure torn down and a house rebuilt to specifications.

RD converted plaintiff's loan from a construction loan to a permanent (conventional) loan, effective April 2, 2015. The last loan servicing action by USDA occurred on August 4, 2015, when plaintiff was sent notice of acceleration and demand for payment. The instant complaint was filed seven years and one month later. Clearly, the six-year statute of limitation expired before plaintiff's complaint was filed herein on September 9, 2022. Consequently, plaintiff's breach of contract claim is time-barred.

## IV.   RD'S ADMINISTRATION OF PLAINTIFF'S SECTION 502 LOAN IS ARBITRARY AND CAPRICIOUS  (Count III)

### A. PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM UNDER THE JUDICIAL REVIEW PROVISIONS OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701-706.

Plaintiff asserts that her claims arise under the Administrative Procedure Act (APA). Doc. #1 at p. 3. The APA, in relevant part, provides: "The reviewing court shall (1) compel action unlawfully withheld or unreasonably denied; and (2) hold unlawful and set aside agency actions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. § 706.

Section 704 of the APA only permits judicial review of "final agency action". The statute provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review". 5 U.S.C. § 704. See, *Lujan v. Defenders of Wildlife*, 497 U.S. 871, 882 (1990) ("When . . . review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the agency action in question must be final agency action") (citing 5 U.S.C. 704). Plaintiff does not seek review of any particular action, or failure to act, by RD. Instead, plaintiff seeks review of various matters and events occurring over multiple years.

RD's management of plaintiff's Section 502 Program loan to construct a dwelling, involving various issues and complaints over a period of eight years, does not qualify as "final agency action" within the purview of the APA. The term "action", as used in the APA, does not include everything done by a federal agency. The APA defines "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act". 5 U.S.C. § 551(13).  For APA purposes, agency action is limited to the set of "circumscribed, discrete agency actions" delineated in section 551(13). *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 60 (2004). "[A]ction is a term of art that does not include all conduct, such as, for example, constructing a building, operating a program, or performing a contract. Rather, the APA's definition of agency action focuses on an agency's determination of rights and obligations, whether by rule, order, license, sanction, relief, or similar action". *Village of Baldhead Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 193 (4th Cir. 2004). See also, *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 804-08 (9th Cir. 2013) (failure to properly operate project administered by Bureau of Reclamation and agency's failure to exercise its water rights and to recoup project costs not "agency action").

11

In addition, the challenged agency action must be final. Agency action is considered final only if two conditions are met. First, the action must "mark the consummation of the agency's decision-making process", and thus, cannot be tentative or interlocutory. Second, the action must be one by which "rights or obligations have been determined, or from which legal consequences will flow". *Bennet v. Spears*, 520 U.S. 154, 177-78 (1997); *Sisseton-Wahpeton Oyate v. U.S. Army Corps of Engineers*, 888 F.3d 906, 915 (8th Cir. 2018). Whether the challenged action is "agency action" that is "final" are threshold questions. If both of these requirements are not met, the action is not reviewable under the APA. *Village of Baldhead Island*, 714 F.3d 193-94.

Administration of plaintiff's section 502 loan from January 11, 2008 through August 4, 2015 is not "final agency action" subject to judicial review under the APA. Regarding RD's 2009 inspections of the construction of the house, there is precedent from this district court that a USDA borrower does not have a viable APA claim based on inadequate USDA inspections. In *Russell v. Harris*, 2009 WL 10677138 (E.D. Ark. 2009), the plaintiff obtained a loan from USDA to construct a house on property the plaintiff owned in Des Arc, Arkansas. The plaintiff sued the contractor and USDA, alleging that the contractor did not complete construction within the time and in the manner required by the construction contract, and that USDA failed to adequately inspect the house and allowed the work to continue, despite obvious defects. The court (The Hon. Susan W. Wright, District Judge) found that the plaintiff was not adversely affected by the challenged action, as required by 5 U.S.C. § 702, because the regulation permitting inspection of construction, 7 C.F.R. § 1924.9(a), specifically provides that government inspections are not intended to assure the borrower that the house is being built in accordance with any plans or specifications. 2009 WL 10677138, *2. In the case at bar, Mrs. Proctor was reminded of the same regulation on several occasions. Cheryl E. Ivy Declaration, Att. 16, 51.

Plaintiff's APA claim seeks to recover, not only injunctive relief, but also "actual and punitive damages" resulting from failure to monitor the contractor, overpayments to the contractor, "hijacking" of plaintiff's social security benefits, and damages for plaintiff's mental anguish, pain and suffering caused by USDA in failing to abide by its own rules and regulations". Doc. #1 at p. 23. The APA does not provide a cause of action for money damages. 5 U.S.C. § 702; *Armendariz-Mata v. U.S. Dep't. of Justice*, 82 F.3d 679, 682 (5th Cir. 1996); *Russell v. Harris*, 2009 WL 10677138, *1.

The complaint also invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, 2202 as a basis for jurisdiction. Doc. #1 at p. 3. However, the Declaratory Judgment Act does not waive sovereign immunity or grant the court jurisdiction over plaintiff's complaint. The Declaratory Judgment Act provides a remedy where jurisdiction exists under other authority. It is not an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Dakota Minnesota & Eastern R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013); *Zutch v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2009).

### B.   PLAINTIFF'S APA CLAIM IS TIME-BARRED

The APA does not have its own statute of limitation, therefore, the 28 U.S.C. § 2401(a) six-year period of limitation applies to APA claims. *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 758-59 (8th Cir. 209); *Wind River Mining Co. V. United States*, 946 F.2d 710, 712-13 (9th Cir. 1991). For the same reasons demonstrated in part III C, above, plaintiff's APA claim for judicial review is barred by the 28 U.S.C. § 2401(a) six-year statute of limitation.

**V. THE COMPLAINT DOES NOT STATE A CLAIM FOR VIOLATION OF THE FAIR HOUSING ACT (TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED), AND ANY SUCH CLAIM WOULD BE TIME-BARRED**

The complaint's jurisdictional allegations include a reference to "the amendments to the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*". Doc. #1 p. 3. The only other reference to the FHA in plaintiff's 24-page complaint is a single sentence: "RD's actions also contravene its obligations to affirmatively further fair housing as required by the Fair Housing Act". Doc. 31 at p. 2. The complaint does not identify the provisions of the FHA that were violated, nor does it include any allegations that, if true, would show a violation of the FHA.

The Fair Housing Act (FHA), Title VIII of the Civil Rights Act of 1968, as amended, prohibits discrimination in the sale, rental or financing of a dwelling on the basis of race, color, religion, sex, familial status, national origin or handicap. 42 U.S.C. § 3604, 3605. It does not cover age discrimination. *Keeney v. Kemper Nat'l. Ins. Cos*., 960 F. Supp. 617, 620 (E.D.N.Y. 1997), affirmed, 133 F.3d 907 (2d Cir. 1998). The Act is enforced by the Secretary of Housing and Urban Development. 42 U.S.C. § 3602(a), 3610, 3612. The complaint does not contain any allegation that RD discriminated against plaintiff because of her age, disability [unidentified], or other protected characteristic. Further, plaintiff was not denied financing of a dwelling. She was approved for a loan, the loan was funded and loan funds were disbursed for the work performed.

A civil action for violation of the FHA must be brought not later than two years after the occurrence of the alleged discriminatory housing practice. 42 U.S.C. § 3613(a)(1). At least three district courts have held that there is no waiver of sovereign immunity for FHA claims to recover money damages. *Gregory v. South Carolina Dep't. of Transp*., 289 F. Supp.2d 721, 726 (D.S.C. 2003); *Boyd v. Browner*, 897 F. Supp. 590, 594-95 (D.D.C. 1995); *Phifer v. Secretary, U.S. Dep't. of HUD*, 2009 WL 8706810, *3-4 (E.D. Cal. 2009).

14

Even if the complaint did state a FHA claim, the two-year FHA statute of limitation would bar any FHA claim. No event actionable under the FHA occurred within the two-year period (September 9, 2020-September 9, 2022) prior to plaintiff's complaint filed herein on September 9, 2022.

## VI.  THE U.S. TREASURY ADMINISTRATIVE OFFSET OF PLAINTIFF'S MONTHLY SOCIAL SECURITY PAYMENTS  IS AUTHORIZED BY LAW

The complaint does not assert a separate claim for relief based on the money deducted from her monthly Social Security benefits. Rather, the damages she seeks to recover include reimbursement for the amount collected by the Treasury offset ($1,317). She seeks a refund of the money collected from her monthly Social Security benefits, doc. # 1 at 23-24. In any event, the collection of plaintiff's delinquent RD loan by administrative offset against her Social Security payments is authorized by federal statutes and regulations.

Plaintiff was informed that if she did not pay her past due debt of $920.30, her debt would be submitted to the U.S. Treasury Offset Program (TOP) for collection from federal payments, such as Social Security benefits. Cheryl E. Ivy Declaration, Att. 68. The Debt Collection Improvement Act of 1996, 31 U.S.C.  § 3701, *et seq*., authorizes the Treasury Department to collect nontax debts owed to federal agencies by withholding funds paid out by other federal agencies. *Johnson v. United States Department of Treasury*, 300 Fed. Appx. 860, 862 (11th Cir. 2008); *Bradshaw v. Veneman*, 338 F. Supp. 2d 139,142, 144 (D.D.C. 2004). The Department of the Treasury operates a centralized debt collection program known as the Treasury Offset Program (TOP). This Program is codified in 31 C.F.R. § 285.5. Through TOP, Treasury has the statutory authority to collect delinquent nontax debts owed to federal agencies by offsetting payments made by other federal agencies. 31 U.S.C. § 3716; 31 C.F.R. § 285.5(a)(1). The withholding of funds payable by the federal government is known as "administrative offset". 31 U.S.C. § 3701(a)(1).

15

Payments made by the U.S. Treasury that are eligible for offset include federal salary, federal retirement benefits, tax refunds and Social Security benefits. 31 U.S.C. § 3716(c)(3)(A)(i).

Plaintiff signed a promissory note to repay the RD loan. She never made any payments, and in fact, informed RD she would not make payments. Her loan account (the loan funds that were used, accrued interest, etc.), was accelerated, and RD demanded payment. Plaintiff did not pay the amount of the debt that was delinquent, or make any payment. There was nothing illegal about collecting plaintiff's delinquent RD loan by administrative offset against her monthly Social Security payments. Further, there are no allegations that the offset against her Social Security payments violated any TOP regulations. Thus, even if plaintiff had a viable claim against federal defendants, she would not be entitled to reimbursement for the amount collected through the TOP.

## VII. CONCLUSION

Plaintiff's complaint does not state a breach of contract claim. Assuming plaintiff does state a cognizable claim, the court's jurisdiction is limited to monetary damages not exceeding $10,000. Plaintiff seeks equitable relief and damages exceeding $10,000. Further, plaintiff's contract claim is barred by the six-year statute of limitation, 28 U.S.C. § 2401(a).

The complaint does not state a claim for judicial review cognizable under the APA. Even if it did, the 28 U.S.C. § 2401(a) six-year period of limitation is applicable, and plaintiff's APA claim is also time-barred.

The complaint does not state a discrimination claim under the Fair Housing Act. Further, any such claim is barred by the FHA two-year statute of limitation.

Collection of plaintiff's delinquent RD loan by U.S. Treasury administrative offset against her monthly Social Security payments through the Treasury Offset Program is authorized by

16

federal law. As RD explained to plaintiff, she is obligated to pay her loan debt whether or not construction of the house was completed.

For these reasons, plaintiff's claims against the federal defendants should be dismissed under Rule 12(b)(1) & (6). In addition, federal defendants are entitled to summary judgment because plaintiff's claims were not filed within the applicable period of limitation, and they are time-barred. The court should grant federal defendants' motions, and judgment should be entered dismissing plaintiff's complaint against the federal defendants with prejudice.

Respectfully Submitted,

JONATHAN D. ROSS
United States Attorney

By */s/ Richard M. Pence, Jr.*
Richard M. Pence, Jr. (AR Bar No. 69059)
Assistant United States Attorney
P. O. Box 1229
Little Rock, Arkansas 72203-1229
Telephone: (501) 340-2600
Richard.Pence@usdoj.gov